UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

TIMOTHY S. RISTER,                              :
                                                :        No. 14-cv-5079
                    Plaintiff,                  :
          v.                                    :
                                                :
COMMUNITY BANK OF ROWAN,                        :
                                                :
                    Defendant.                  :
_____

## MEMORANDUM OPINION

**Defendant's Motion to Dismiss, ECF No. 7 – Granted**
**Defendant's Motion to Transfer Venue, ECF No. 8 – Denied**
**Plaintiff's Motion to Enforce Settlement Agreement, ECF No. 21 – Denied**

**Joseph F. Leeson, Jr.**                              **September 21, 2015**
**United States District Judge**


I.      **Introduction**

       This matter comes before the Court upon Defendant Community Bank of Rowan's (now

Yadkin Bank), Rule 12(b)(2)(5)(6) Motion to Dismiss, Alternative Rule 12(e) Motion for More

Definite Statement, and Rule 12(f) Motion to Strike Unliquidated Damages Amounts, ECF No.

7, Defendant's Motion to Transfer Venue, ECF No. 8, and Plaintiff's Motion to Enforce

Settlement Agreement, ECF No. 21. For the reasons set forth below, Defendant's Motion to

Dismiss pursuant to Rule 12(b)(6) will be granted, Defendant's Motion to Strike Unliquidated

Damages will be denied as moot, Defendant's Motion to Transfer will be denied,[1] and Plaintiff's

Motion to Enforce Settlement Agreement will be denied.

_____
[1]      Defendant's Motion to Transfer Venue will be denied, particularly in view of Plaintiff's asserted disability.
See Pl.'s Resp. Opp. Def.'s Mot. Transfer 5, ECF No. 12 (stating that Plaintiff is "permanently disabled and this

## II.    Background

On July 19, 2011, Plaintiff Timothy S. Rister, along with Maria L. Rex, signed a

Commitment Letter with the Community Bank of Rowan acknowledging that both intended to

be guarantors on a United States Small Business Administration (SBA) loan to a corporate

borrower, Mystique Makeover, LLC ("the Borrower"), for a maximum principal amount of

$100,000. See Commitment Letter, at Compl. pp. 69-71, ECF No. 1 ("Commitment Letter"). The

Borrower sought the loan in order to start up a spa/salon in Charlotte, North Carolina, which was

to be operated by Ms. Rex. See Compl. ¶ 13; Commitment Letter ¶¶ 1, 2. On September 9, 2011,

Plaintiff signed an SBA Unconditional Guarantee (SBA Form 148) with respect to the SBA loan

to the Borrower in the principal amount of $100,000. See Unconditional Guarantee, at Compl.

pp. 83-87 ("Unconditional Guarantee"). The Unconditional Guarantee provided that the

Guarantor agreed unconditionally to pay Defendant all amounts owing under the promissory note

for the loan to Mystique Makeover. See Unconditional Guarantee ¶ 1. Further, the Guarantee

provided that the Guarantor waived a series of notices, rights, and sixteen enumerated defenses

to enforcement of the Unconditional Guarantee. See Unconditional Guarantee ¶ 6.

In February 2014, Ms. Rex ceased her business operations due to disability. See Compl. ¶

13. The Borrower defaulted on the loan, and Ms. Rex filed for bankruptcy in the United States

Bankruptcy Court for the Western District of North Carolina on March 20, 2014. See In re Maria

Lee Rex, Case No. 14-30460 (Bankr. W.D.N.C.). Ms. Rex's bankruptcy proceeded as a Chapter

7 case and was closed on October 29, 2014. Id.

Following the Borrower's default, Defendant's North Carolina counsel, Ellis & Winters

LLP, sent a demand letter to Plaintiff dated May 2, 2014. Demand Letter, at Compl. pp. 88-91

---

Court venue was most practical and easiest for him to navigate due to his permanent disabilities"). See Beverage
Mgmt. Sys., Inc. v. Ott, No. 3:12-CV-2126-SI, 2013 WL 1296083, at *9 (D. Or. Mar. 26, 2013) ("Consideration of
serious health issues is appropriate in a motion to transfer venue.").

("Demand Letter"). The Demand Letter informed Plaintiff that as a result of the Borrower's defaults, the principal balance, all accrued but unpaid interest, and all other amounts owing under the loan were immediately due and payable in full, in the amount of $111,301.76 as of the date of the letter. Id.

Plaintiff commenced this action on September 3, 2014, filing a Complaint containing seventeen counts. On October 20, 2014, Defendant filed its Rule 12(b)(2)(5)(6) Motion to Dismiss, Alternative Rule 12(e) Motion for More Definite Statement, and Rule 12(f) Motion to Strike Unliquidated Damages Amounts. That same day, Defendant also filed its Motion to Transfer Venue. On December 29, 2014, Plaintiff filed his Motion to Enforce Settlement Agreement.

On February 17, 2015, this Court ordered Plaintiff to show cause why this action should not be dismissed for failure to serve Defendant in accordance with Fed. R. Civ. P. 4(h), or provide proof of service in accordance with that Rule. ECF No. 26. On February 25, 2015, Plaintiff filed a Response to the Order, asserting that Defendant was properly served on November 5, 2014. ECF No. 27. On March 9, 2015, Defendant filed a Reply, acknowledging that it "does not dispute that it was served with a copy of the Complaint on or about November 5, 2014." See ECF No. 28.[2] Thereafter, the case was referred to Magistrate Judge Henry S. Perkin for a series of settlement conferences, see ECF Nos. 29-30, 32-37, the most recent of which occurred in August 2015.

---

[2]   Accordingly, Defendant has "abandon[ed] its arguments pursuant to Rules 12(b)(2) and 12(b)(5) of the Federal Rules of Civil Procedure that the complaint should be dismissed for lack of personal jurisdiction and insufficient service of process." See Def.'s Reply Br. in Further Supp. Mot. Dismiss 1, ECF No. 16.

### III.     Legal Standards

#### A.     Motion to Dismiss

The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)). This Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted).

In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Court subsequently laid out a two-part approach to reviewing a motion to dismiss under Rule 12(b)(6).

First, the Court observed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id. at 678. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive the motion; "instead, 'a complaint must allege facts suggestive of [the proscribed] conduct.'" Id.; Phillips, 515 F.3d at 233 (quoting Twombly, 550 U.S. at 563 n.8). While Rule 8, which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," was "a notable and generous departure from the hyper-technical,

code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." <u>Iqbal</u>, 556 U.S. at 678-79 ("Rule 8 . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." (citing <u>Twombly</u>, 550 U.S. at 555)); <u>see</u> Fed. R. Civ. P. 8(a)(2). "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also the 'grounds' on which the claim rests." <u>Phillips</u>, 515 F.3d 224, 232 (citing <u>Twombly</u>, 550 U.S. at 555 n.3).

Second, the Court emphasized, "only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id.</u> at 678. Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. <u>Phillips</u>, 515 F.3d at 234 (quoting <u>Twombly</u>, 550 U.S. at 555). This is because Rule 8(a)(2) "requires not merely a short and plain statement, but instead mandates a statement 'showing that the pleader is entitled to relief.'" <u>See id.</u>, 515 F.3d at 234 (quoting Fed. R. Civ. P. 8(a)(2)). If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" <u>Iqbal</u>, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "Detailed factual allegations" are not required, <u>id.</u> at 678 (quoting <u>Twombly</u>, 550 U.S. at 555), but a claim must be "nudged . . . across the line from conceivable to plausible," <u>id.</u> at 680 (quoting <u>Twombly</u>, 550 U.S. at 570).

"The plausibility standard is not akin to a 'probability requirement,'" but there must be "more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> at 678 (quoting <u>Twombly</u>, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a

defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" Id. (quoting Twombly, 550 U.S. at 557)).

**B.      Motion to Enforce Settlement Agreement**

"[C]ourts treat a motion to enforce settlement under the same standard as a motion for summary judgment because the central issue is whether there is any disputed issue of material fact as to the validity of the settlement agreement." Dugan v. O'Hara, No. CV 14-5252, 2015 WL 5116726, at *4 (E.D. Pa. Aug. 31, 2015) (quoting  Martin v. Hoveround Corp., No. 10–3970, 2011 WL 742573, at *2 (D.N.J. Feb. 24, 2011)). Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if the fact "might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, (1986), and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," id. When the evidence favoring the nonmoving party is "merely colorable" or "not significantly probative, summary judgment may be granted." Id. at 249–50 (citations omitted). The parties must support their respective contentions—that a fact cannot be or is genuinely disputed—by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R .Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

**IV.      Defendant's Motion to Dismiss will be Granted.**

**A.      Legal Background**

The Small Business Administration (SBA), which was established by Congress in 1953 as an "independent federal agency 'under the general direction and supervision of the

President,'" Peter A. Alces, <u>The Law of Suretyship and Guaranty</u> § 9:1 (quoting Addison W.

Parris, <u>The Small Business Administration</u> 19 (1968)), was created to carry out the policies

established by Congress in the Small Business Act, <u>see</u> 15 U.S.C.A. § 633, the primary purpose

of which was to provide financial assistance for business development. "The SBA operates by

guaranteeing loans to reduce the risk that lenders would ordinarily face when dealing with small

businesses." <u>Hudson v. Sun Nat. Bank</u>, No. CIV.A. 10-6401, 2014 WL 3700147, at *3 (E.D. Pa.

July 25, 2014) (emphasis omitted). Lenders benefit from this arrangement because the SBA

guarantees the lenders such that they are not "left swallowing the debt left unpaid by the

borrower." <u>Id.</u> Borrowers likewise benefit "because they are given access to loans that,

presumably, banks . . . would either be unwilling to extend or that would be prohibitively

expensive because the banks would have to charge enough to self-insure." <u>Id.</u>

 The Small Business Act requires that SBA loans "shall be of such sound value or so

secured as reasonably to assure repayment." 15 U.S.C. § 636(a)(7). "A common method that the

SBA uses to determine compliance with that requirement is to have personal guarantors execute

guaranty agreements." Alces, <u>supra</u>, § 9:32. In general, a guaranty is a "collateral promise or

undertaking by one person to answer for the payment of some debt in the case of default of

another who is liable for such payment in the first instance." <u>Ford Motor Credit Co. v. Lototsky</u>,

549 F. Supp. 996, 998 (E.D. Pa. 1982). A guaranty can be "conditional" or "unconditional." An

unconditional guaranty "is one whereby the guarantor agrees to pay or perform a contract on

default of the principal without limitation. It is an absolute undertaking to pay a debt at maturity

or perform an agreement if the principal does not pay or perform." <u>Id.</u> (quoting <u>Continental</u>

<u>Leasing Corp. v. Lebo</u>, 272 A.2d 193 (Pa. Super. Ct. 1970)). In other words, "[w]hen the

guarantee is absolute or unconditional, there is no limitation on the right of the creditor to bring

7

an action directly against the guarantor when the principal commits a default." Paul Revere

Protective Life Ins. Co. v. Weis, 535 F. Supp. 379, 384 (E.D. Pa. 1981). Further, a guarantor can

agree to waive defenses otherwise available to him. As this District found in Ford Motor Credit

Co. v. Lototsky, "the proposition that an explicit waiver precludes a guarantor from asserting

[defenses] in an action to recover under the guaranty" is "firmly embedded in Pennsylvania

common law." 549 F. Supp. at 999. Indeed, "if the terms of the contract so state, a guarantor may

assume greater liability than that of the principal." Id. (quoting Paul Revere Protective Life Ins.

Co., 535 F. Supp. at 386). Ultimately, "the nature and extent of the liability of a guarantor

depends on the terms of the contract of guaranty." Paul Revere Protective Life Ins. Co., 535 F.

Supp. at 386.

The SBA typically employs unconditional guarantees, see Alces, supra, § 9:32, as

indicated in its Form 148 – the form signed by Plaintiff in this case – which is titled

"Unconditional Guarantee" and which provides that the Guarantor "unconditionally guarantees

payment to Lender of all amounts owing under the Note." In addition, as noted above, the Form

lists twenty-seven "rights, notices, and defenses that [the] Guarantor waives" by entering into the

agreement.

Courts have observed that "of necessity loans made by and/or participated in by the

S.B.A. are fraught with risk." United States v. Basil's Family Supermarket, Inc., 259 F. Supp.

139, 141 (S.D.N.Y. 1966) (quoting United States v. Kohn, 243 F. Supp. 293, 297 (W.D.S.C.

1965)). Further, according to one commentary, "[u]ltimate responsibility for defaulted SBA

loans . . . usually falls on the private guarantors who cannot escape the consequences of having

signed absolute and unconditional guarantees." Alces, supra, § 9:35.

**B.      Plaintiff fails to state a claim upon which relief can be granted.**

A common theme in the Complaint is Plaintiff's belief that Defendant owed various duties to him by virtue of his status as guarantor. This belief is mistaken. On the contrary, "[c]ourts have refused to find a general duty of care between a lender and a guarantor." Berry v. First Nat. Bank of Mercer Cnty., 892 F. Supp. 127, 128 (W.D. Pa. 1994). Further, in the specific context of SBA loans, courts have observed that SBA loan documents do not give rise to a duty of care on behalf of the lender to the guarantor. See Hudson v. Sun Nat. Bank, No. CIV.A. 10-6401, 2014 WL 3700147, at *3 (E.D. Pa. July 25, 2014) ("It does not appear that the Loan agreement was written for the benefit of the personal guarantors. The provisions of the Loan agreement outlining the administration of the loan and the duties of the lender and the borrower were for the benefit of the SBA. These requirements reduced the chances that the borrower would default and that the SBA guaranty would be enforced by the Lender. Any benefits that the personal guarantors derived from the Loan agreement were merely incidental.") (quoting United States v. Healy, 923 F. Supp. 1424, 1429 (D. Kan. 1996)); Matas v. Binghamton Sav. Bank, 650 N.Y.S.2d 37, 38 (N.Y. App. Div. 1996) ("The gravamen of this action is plaintiff's belief that, pursuant to the wording of the SBA authorization and loan agreement, there was a duty owed by defendant to him, as guarantor, to insure that the loan proceeds were dispersed as specified therein and that Sight & Sound [the borrower] used such proceeds in the manner agreed upon. However, the SBA authorization and loan agreement states that the conditions therein specified are for the benefit of defendant [the lender] and the SBA.").

Moreover, as discussed in greater detail below, Plaintiff has failed to plead any facts that would otherwise indicate that Defendant owed a duty to Plaintiff. For example, under

Pennsylvania law,[3] although a lender does not ordinarily owe a fiduciary duty to a borrower, a confidential relationship nevertheless may arise where the creditor gains substantial control over the debtor's business affairs. See GE Capital Mortgage Servs., Inc. v. Pinnacle Mortgage Inv. Corp., 897 F. Supp. 854, 863 (E.D. Pa. 1995). Here, however, Plaintiff has failed to allege Defendant gained "substantial control" over his business affairs, nor does he allege any other special circumstances that might give rise to a fiduciary duty. Rather, he alleges nothing more than a lender-guarantor relationship. This is insufficient to create a confidential relationship such that Defendant would owe a fiduciary duty to Plaintiff.

With these principles in mind, the Court will address each of the counts in the Complaint in turn.

**(1)      Count One**

Under Count One, Plaintiff alleges that he was "negligently, wrongfully, carelessly, and recklessly approved for the loan application to [his] harm and detriment." Compl. ¶ 58. He also alleges that "Defendant[] made [him] in essence a 'borrower' and/or 'co-borrower.'" Compl. ¶ 7. However, as indicated above, Plaintiff has failed to plead any facts in support of the notion that Defendant had a duty of care to Plaintiff, let alone a duty to prevent Plaintiff from agreeing to guarantee the loan. Moreover, under the Unconditional Guarantee signed by Plaintiff, he waived any defense to the enforcement of the Guarantee based upon the overstatement or adverse change

---

[3]      Pennsylvania law will govern the disputes concerning the Unconditional Guarantee and other related matters in this diversity action. In a diversity action, "the choice of law rules of the forum state [determine] which state's law will be applied." Shuder v. McDonald's Corp., 859 F.2d 266, 269 (3d Cir. 1988) (citing Klaxon v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941)). "Under Pennsylvania choice of law rules, no choice of law analysis is necessary in cases in which there is no relevant substantive divergence between two bodies of competing law." See Garcia-Valentie v. McKibbin, No. CIV.A. 06-5097, 2007 WL 2022067, at *3 (E.D. Pa. July 9, 2007) (citing Ratti v. Wheeling Pittsburgh Steel Corp., 758 A.2d 695, 702 (Pa. Super. Ct. 2000)). Because the fundamental principles of the law of guaranty are generally similar from one state to the next, a choice of law analysis in this instance is unnecessary. See id.

in the financial condition of the Borrower or a guarantor. See Unconditional Guarantee ¶ 6(C)(10).

Plaintiff also alleges under Count One that Defendant acted in violation of federal regulations found in 7 C.F.R. § 3550.53(a) and (g) and 7 C.F.R. § 3550.54. However, these regulations, which set forth policies "for the direct single family housing loan programs operated by the Rural Housing Service (RHS) of the U.S. Department of Agriculture (USDA)," see 7 C.F.R. § 3550.1, do not apply to this case or provide Plaintiff with a cause of action. Plaintiff points to a letter sent to him by Defendant dated July 12, 2011, concerning Plaintiff's credit score, in which Defendant referred to Plaintiff's "application for a home loan." See Compl. p. 68. This apparently mistaken reference, however, did not bring the Borrower's loan or Plaintiff's Unconditional Guarantee under the aegis of the Rural Housing Service. Moreover, Plaintiff does not allege that he was under the mistaken impression that he was entering into a rural home loan or that he was a home loan borrower instead of an SBA loan guarantor. Finally, in the Unconditional Guarantee that he signed, Plaintiff waived any defense to the enforcement of the Unconditional Guarantee based upon the Lender making errors or omissions in the Loan Documents or in the administration of the Loan. See Unconditional Guarantee ¶ 6(C)(11).

**(2)     Count Two**

Under Count Two, Plaintiff alleges that "Defendant[] breached any contract with Plaintiff, actual or implied to the harm and detriment of Plaintiff." Compl. ¶ 79. To prevail on a claim for breach of contract, the plaintiff must establish (1) the formation of a contract and its essential terms, (2) a breach of a duty imposed by that contract, and (3) damages resulting from that breach. Hudson, 2014 WL 3700147, at *1. Here, Plaintiff has failed to identify the contract to which he is referring or the essential terms of that contract. Assuming that Plaintiff is referring

to the Unconditional Guarantee agreement, he has failed to allege the violation of any section or clause contained in that agreement. Accordingly, Plaintiff has failed to state a claim for breach of contract.

**(3)    Count Three**

Under Count Three, Plaintiff alleges claims of misrepresentation, deception, bad faith, and negligence/mistake. In particular, Plaintiff alleges that Defendant made various misrepresentations to him concerning his status as a "qualified applicant" and his income. Compl. ¶ 82. Plaintiff also alleges that Defendant had a "duty of good faith and fair dealing to inform Plaintiff that his income sources were not eligible sources or that they should have been exempted and failed to inform or disclose this to Plaintiff to his harm." Compl. ¶ 91.

The elements of a claim of common law fraud include: (1) a representation; (2) material to the transaction at issue; (3) made falsely, with either knowledge or reckless disregard of its falsity; (4) with the intent to misleading another person or inducing justifiable reliance; and (5) an injury caused by the reliance. See Dunkin' Donuts Franchised Restaurants, LLC v. Claudia I, LLC, Civil Action No. 12-2010, 2013 WL 3716525, at *6 (E.D. Pa. July 15, 2013). In addition, Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This heightened pleading standard "requires plaintiffs to plead with particularity the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." Hericks v. Lincare Inc., No. CIV.A. 07-387, 2014 WL 1225660, at *5 (E.D. Pa. Mar. 25, 2014) (quoting Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984)). "Plaintiffs may satisfy this requirement by

pleading the 'date, place or time' of the fraud, or through 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" Id. (quoting Seville, 742 F.2d at 791)). "At a minimum, the plaintiff must support his or her allegation of fraud with essential factual background—the 'who, what, when, where, and how of the events at issue.'" Id. (quoting In re Rockefeller Ctr. Props., Inc. Sec. Litig., 311 F.3d 198, 217 (3d Cir. 2002)).

Plaintiff's allegations do not meet this standard. Although Plaintiff alleges that Defendant made various misrepresentations to him concerning his financial status, Plaintiff fails to allege anything about the "essential factual background" of the alleged misrepresentations – for example, what form the misrepresentations took, or when, where, or how they occurred. Accordingly, Plaintiff has failed to state a claim for fraud.

Plaintiff also fails to state a claim concerning Defendant's alleged breach of a duty of good faith and fair dealing. Although this District has found that under Pennsylvania law "a duty of good faith and fair dealing is inherent in every contract," this does not mean that "a duty of good faith and fair dealing should override the express terms of a contract." See Bedrock Stone & Stuff, Inc. v. Manufacturers & Traders Trust Co., No. CIV.A. 04-CV-02101, 2005 WL 1279148, at *8 (E.D. Pa. May 25, 2005). Rather, "[t]he covenant of good faith may be breached when a party unreasonably exercises discretion authorized in a contract." Id. Here, however, Plaintiff has not alleged that Defendant unreasonably exercised discretion authorized to it under a contract. Rather, as noted above, Plaintiff alleges that Defendant had a duty of good faith and fair dealing "to inform Plaintiff that his income sources were not eligible sources or that they should have been exempted." Compl. ¶ 91. Plaintiff does not, however, identify the contract that gave rise to this alleged duty, and this duty does not appear in the Unconditional Guarantee.

**(4)     Count Four**

Under Count Four, Plaintiff alleges that Defendant "failed to define or give an amount as to what any commitment fee was . . . in the . . . commitment letter." Compl. ¶ 96. Plaintiff does not explain what the phrase "commitment fee" refers to, and the Court has been unable to find any reference to a "commitment fee" in the Commitment Letter, Unconditional Guarantee, or in any of the other papers attached to the Complaint.

**(5)     Count Five**

Under Count Five, Plaintiff alleges that Defendant "negligently, wrongfully, carelessly, and recklessly failed to require any disability insurance policy to protect the loan from default in the event of a reduced work capacity or disability affecting Maria L. Rex." Compl. ¶ 102. However, Plaintiff fails to allege any facts to support the notion that Defendant had a duty to Plaintiff to maintain such a policy. Moreover, in the Unconditional Guarantee that Plaintiff signed, he waived any defense to the enforcement of the Guarantee in the event that the Lender "did not make or perfect a claim upon the . . . disability of Borrower or any guarantor of the Note." See Unconditional Guarantee ¶ 6(C)(9).

**(6)     Count Six**

Under Count Six, Plaintiff alleges that Ms. Rex listed a "$3,213,570 . . . judgment-asset acquired via Civil Action No. 13-4209 before the Honorable Judge Lawrence F. Stengel . . . in the United States District Court for the Eastern District of Pennsylvania" and that Defendant "had an implied obligation to make or perfect a claim to that asset and did not [do so] to the harm and detriment of plaintiff." Compl. ¶¶ 115-19. In the case to which Plaintiff refers, Rex v. Adams, No. CIV.A. 13-4209, 2014 WL 4851694, at *1 (E.D. Pa. Sept. 30, 2014), Ms. Rex sought a default judgment against the defendant Adams in the amount of $3,213,570 for

compensatory and punitive damages. The court granted Ms. Rex's motion for default judgment, but declined to award the amount sought by Ms. Rex and instead awarded restitution in the amount of $107,119. Id. In any event, according to the Chapter 7 Trustee's Report filed in Ms. Rex's bankruptcy action on October 28, 2014, no such asset exists for distribution. The Trustee reported that he made a diligent inquiry into the financial affairs of the debtor and concluded that "there is no property available for distribution from the estate over and above that exempted by law." See In re Maria Lee Rex, Case No. 14-30460 (Bankr. W.D.N.C.).

Further, even if the asset did exist, Plaintiff fails to allege any facts to support the notion that Defendant had any duty to Plaintiff with respect to the asset. The Unconditional Guarantee that Plaintiff signed provided that the lender "is not required to seek payment from any other source before demanding payment from Guarantor." Unconditional Guarantee ¶ 1. Further, the Unconditional Guarantee provided that the Guarantor waived all rights to demand upon the Borrower, see Unconditioal Guarantee ¶ 6(A)(1), and all defenses to enforcement of the Guarantee based upon the Lender not seeking payment from the Borrower, any other guarantors, or any collateral before demanding payment from the Guarantor, see Unconditional Guarantee ¶ 6(C)(12).

**(7)    Count Seven through Eleven**

Counts Seven through Eleven contain numerous allegations concerning information that was not disclosed to Plaintiff by Defendant, including the Borrower's landlord lease, various leasing documents, a landlord waiver, a vendor proposal for leasehold improvements, a $36,000 landlord construction contribution stated in the lease, Defendant's ledger reflecting disbursements, and loan settlement documents. However, Plaintiff has failed to allege any facts giving rise to a duty on the part of Defendant to disclose this information to him. On the

15

contrary, in the Unconditional Guarantee that he signed, Plaintiff waived notice of any action or inaction on the Note or Collateral, such as disbursements, payment, or nonpayment, and any change in the financial condition or business operations of Borrower or any guarantor, and any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note. See Unconditional Guarantee ¶ 6(B)(4)-(6). (Plaintiff does not allege that any of the documents concerned an increase in the amounts due under the Note.)

Counts Seven through Eleven also contain allegations that Defendant misrepresented in the SBA Authorization form, see Compl. pp. 72-82, that $61,875 of the loan proceeds would be used to make leasehold improvements, when in fact Defendant knew that the amount used for leasehold improvements would be greater than that figure and proceeded to pay $98,150 for the improvements. Further, Plaintiff alleges that Defendant should have known that a $36,000 landlord construction contribution was available under the lease and should have credited that amount to the loan.

Again, Plaintiff fails to allege any facts to support the existence of a duty on behalf of Defendant to Plaintiff with respect to the matters raised in these counts. Moreover, Defendant possessed extensive powers under the Unconditional Guarantee to modify the terms of the Note or any other Loan Document without notice to Plaintiff, without Plaintiff's consent, and without Plaintiff being able to defend against enforcement of the Unconditional Guarantee based upon those modifications, as long as the total due under the Note did not change. See Unconditional Guarantee ¶¶ 4(A); 6(C)(14). (Again, Plaintiff does not allege that the total due under the Note changed.)

16

**(8)**     **Count Twelve**

Under Count Twelve, Plaintiff alleges that Defendant breached a duty of confidentiality to Plaintiff by forwarding private information regarding Plaintiff to the law firm Ellis and Winters LLP, which then used this information as the basis for the Demand Letter that it sent to Plaintiff. Compl. ¶ 317. Plaintiff does not plead any facts that could support the existence of such a duty. Rather, it was contemplated in the Unconditional Guarantee that the Lender might require aid of counsel to enforce the Unconditional Guarantee. See Unconditional Guarantee ¶¶ 9(A); 10. Moreover, as Defendant points out, it was Plaintiff who made the Demand Letter public with his filing of this lawsuit.

**(9)**     **Count Thirteen**

Under Count Thirteen, Plaintiff again alleges that Defendant breached the duty of good faith. This allegation fails for the reasons stated above under Count Three.

**(10)**     **Count Fourteen**

Under Count Fourteen, Plaintiff alleges that Defendant failed to secure certain equipment at the former salon location and failed to protect the resale interest or value of that equipment. Compl. ¶ 352.

Under Pennsylvania law, there is generally a duty to conduct a commercially reasonable sale of collateral and a duty not to impair collateral. See DVI Fin. Servs., Inc. v. Kagan, No. CIV. A. 00-CV-1666, 2001 WL 706365, at *3 (E.D. Pa. June 21, 2001). However, there is a "line of Pennsylvania cases and Federal cases interpreting Pennsylvania law which have carved out an exception to this general rule applicable to unconditional guaranties. These cases state that when the guaranty at issue is unconditional, it is an absolute undertaking to pay a debt at maturity if the principal does not pay, and there is no affirmative duty to preserve collateral

unless the guarantor relies on the collateral." Id. Accordingly, "under an unconditional guaranty, the guarantor agrees to pay on a contract after the default of the principal without limitation and irregardless of issues such as preservation of security." Id. at *4.

Here, in the Unconditional Guarantee, Defendant specifically disavowed any responsibility to maintain the collateral, and Plaintiff waived any ability to challenge Defendant's actions with respect to the collateral. Specifically, Plaintiff waived all rights to redeem any collateral before or after Defendant disposed of it; have any disposition of collateral advertised; or require a valuation of the collateral. See Unconditional Guarantee ¶ 6(A)(2)-(4). Further, Plaintiff waived any notice of any action or inaction on the collateral and the time and place of any sale or disposition of the collateral. See Unconditional Guarantee ¶ 6(B)(4) and (B)(7). Plaintiff waived any defenses based on any Lender's failure to obtain, perfect, or maintain a security interest in any property taken as collateral; any Lender failure to properly value or inspect the collateral; the change in value, neglect, loss, destruction or underinsurance of the collateral; Lender impairment of the collateral; Lender's failure to dispose of the collateral; Lender's failure to conduct a commercially reasonable sale of collateral; or Lender's failure to obtain the fair market value of the collateral. See Unconditional Guarantee ¶ 6(C)(2)-(8). In sum, Plaintiff has failed to plead facts that would support the existence of a duty on the part of Defendant to Plaintiff with respect to the equipment at the former salon location.

**(11)    Count Fifteen**

Under Count Fifteen, Plaintiff alleges that Defendant committed fraud against him by failing to disclose the $36,000 credit and by representing to Plaintiff that the loan was a "home loan." These allegations fail to state a claim because, as discussed above, Plaintiff has not plausibly alleged a duty of disclosure with respect to the $36,000, and because Plaintiff has not

alleged that he relied on the "home loan" statement or that he suffered any damages as a result of that statement.

**(12)     Count Sixteen**

Under Count Sixteen, Plaintiff alleges that Defendant failed to disclose certain loan documents to Plaintiff. These allegations fail to state a claim for the reasons discussed above under Counts Seven through Eleven.

**(13)     Count Seventeen**

Under Count Seventeen, Plaintiff alleges that Defendant acted "in violation of 42 USC 1983" with respect to the alleged $36,000 credit mentioned above. Compl. ¶ 385. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and law, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

"Section 1983 does not by itself confer substantive rights, but instead provides a remedy for redress when a constitutionally protected right has been violated." Curtis v. Wetzel, No. CV 14-0786, 2015 WL 5115439, at *4 (E.D. Pa. Aug. 28, 2015). "Therefore, in order to succeed on a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate: (1) the violation of a right secured by the Constitution, and (2) that the constitutional deprivation was committed by a person acting under the color of state law." Id. Defendant is not a "person," and was not acting under color of law. Accordingly, Plaintiff has failed to state a claim under Count Seventeen.

**(14)     Summary of Counts One through Seventeen**

Plaintiff has failed to state a claim for relief under any of the seventeen counts listed in his Complaint. Accordingly, Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) will be

granted.[4] Because Plaintiff's pleadings with respect to Counts One through Three and Counts

Five through Seventeen do not include any allegations suggesting that he could conceivably

establish a claim upon which relief could be granted, the Court finds that any amendment of his

claims under these Counts would be futile. See In re Burlington Coat Factory Sec. Litig., 114

F.3d 1410, 1434 (3d Cir. 1997) (finding that "futility" may "justify a denial of leave to amend").

Accordingly, the Court will dismiss Plaintiff's claims under Counts One through Three and

Counts Five through Seventeen with prejudice. With respect to Count Four, because the Court is

unable to identify the "commitment fee" to which Plaintiff refers, the Court is unable to

determine, at this stage, that amendment would be futile. Accordingly, Plaintiff will be granted

leave to amend his Complaint solely with respect to the claims raised under Count Four.[5]

Plaintiff is advised that should he choose to file an amended complaint, it must contain

allegations that are "simple, concise, and direct." See Fed. R. Civ. P. 8(d)(1). In addition, "any

amended complaint must be complete in all respects. It must be a new pleading that stands by

itself as an adequate complaint without reference to any documents already filed." See Bowens

v. Employees of the Dep't of Corr., No. CIV.A. 14-2689, 2015 WL 803101, at *8 (E.D. Pa. Feb.

26, 2015).

## V.   Defendant's Motion to Strike Unliquidated Damages Amounts will be Denied as Moot.

At the conclusion of all but one of the Counts in the Complaint, Plaintiff includes an

unnumbered paragraph that reads as follows: "WHEREFORE, Plaintiff demands judgement

against Defendants for damages in an amount of ONE MILLION DOLLARS, punitive damages

---

[4]      Defendant's Motion for a More Definite Statement pursuant to Rule 12(e) will be denied as moot.
[5]      Plaintiff appears to assert a number of new allegations in his Opposition Brief to Defendant's Motion to Dismiss that are outside the scope of his Complaint. See ECF No. 13. However, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss," Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988), and accordingly the Court has not considered here any new allegations made in Plaintiff's Opposition Brief.

as seen just by the Court, interest, costs, and counsel fees and such other damages or relief that the Court deems equitable and just." (The one exception is Court Seventeen, which includes an unnumbered "Wherefore" paragraph seeking five million dollars, rather than one million dollars.) Pursuant to Rule 12(f), Defendant moves to strike the damages amount pled in each of these paragraphs, contending that this aspect of the pleading violates Local Civil Rule of Procedure 5.1.1.

> Rule 5.1.1 provides:
>
> No pleading asserting a claim for unliquidated damages shall contain any allegation as to the specific dollar amount claimed, but such pleadings shall contain allegations sufficient to establish the jurisdiction of the court, to reveal whether the case is or is not subject to arbitration under Local Rule 53.2, and to specify the nature of the damages claimed e.g., "compensatory," "punitive," or both.

"Local Rule 5.1.1 is properly enforced by way of a motion to strike pursuant to Rule 12(f)." Logan v. Salem Baptist Church of Jenkintown, No. 10-CV-014, 2010 WL 3155261, at *9 (E.D. Pa. July 30, 2010). Because the Complaint will be dismissed, Defendant's Motion to Strike is moot. Nevertheless, this Court finds that the "Wherefore" paragraphs violate Local Rule 5.1.1 and cautions Plaintiff against including a request for a specific dollar amount in his amended complaint.

## VI.    Plaintiff's Motion to Enforce Settlement Agreement will be Denied.

Plaintiff asserts that in a December 2, 2014 telephone call with defense counsel, the parties agreed to a settlement whereby Plaintiff would pay Defendant $3,000 and the parties would exchange full mutual releases. Pl.'s Mot. Enforce Settlement, ECF No. 21. Defendant contends that, as supported by an affidavit by attorney Zachary R. Fowler, "the conversation held between Mr. Fowler and Plaintiff on or about December 2, 2014 was in the nature of a Federal

Rule of Evidence 408 compromise offer or negotiation." Def.'s Br. Opp. Pl.'s Mot 1; ECF No.

23. Further,

> The main intent of Mr. Fowler's call, which Mr. Fowler made clear, was to determine if Plaintiff would be willing to increase his prior monetary offer from $2000 to $3000. Mr. Fowler would then take that increased offer back to the Defendant for consideration as a pecuniary term of a possible settlement agreement.
>
> Mr. Fowler did not have his client's authority to agree to any particular term or condition, much less globally settle this entire matter over the telephone on December 2, 2014. Indeed, on more than one occasion during this discussion, Mr. Fowler advised Plaintiff that any settlement would be subject to and contingent upon Mr. Fowler obtaining his client's, i.e., the Defendant's, approval, which he did not yet possess.
>
> Mr. Fowler also indicated to Plaintiff that before the Defendant could agree to any terms or conditions, the contours of any settlement would have to be fleshed out in a written settlement and release agreement executed by the parties. At the time of the telephone conversation, Plaintiff communicated to Mr. Fowler that he understood that any settlement agreement was subject to obtaining approval from the Defendant and had to be memorialized by a written settlement and release agreement signed by the parties. As Plaintiff concedes . . . there have been no agreement drafts exchanged between the parties, and nothing has been reduced to writing.

Id. at 1-2 (citations and footnote omitted).

"A settlement agreement is a contract subject to the local laws of contract interpretation."

Roberts Enterprises, LP v. Fun Sport, Inc., No. CV 06-490, 2008 WL 10712416, at *2 (D. Del.

Mar. 7, 2008). In Mazzella v. Koken, 739 A.2d 531 (Pa. 1999), the Pennsylvania Supreme Court

observed that:

> The enforceability of settlement agreements is governed by principles of contract law. To be enforceable, a settlement agreement must possess all of the elements of a valid contract. As with any contract, it is essential to the enforceability of a settlement agreement that the minds of the parties should meet upon all the terms, as well as the subject-matter, of the [agreement].

Id. at 536. Further, under Pennsylvania law, "the party alleging a compromise or settlement

agreement has the burden of pleading and proving both the existence of the agreement and the

<u>actual</u> authority of the attorney to enter into it." <u>Gatto v. Verizon Pennsylvania, Inc.</u>, No. CIV.A. 08-858, 2009 WL 3062316, at *8 (W.D. Pa. Sept. 22, 2009) (quoting <u>In re Condemnation of Lands</u>, 699 A.2d 1331, 1335 (Pa. Commw. Ct. 1997)).

Plaintiff has not met this burden. The Court finds that the evidence "supports the proposition that there was a fundamental and mutual misunderstanding between the parties regarding the essential elements of their agreement, a mutual misunderstanding which prevents [the Court] from enforcing any agreement in this matter." <u>See</u> <u>Giambra v. Storch</u>, No. 3:14-CV-1084, 2015 WL 3651688, at *3 (M.D. Pa. June 11, 2015). Accordingly, "when the facts are viewed in the light most favorable to [Defendant], no 'manifest mutual assent' is apparent, and accordingly the Court cannot say that an enforceable contract was formed as a matter of law." <u>See</u> <u>Boyd v. Cambridge Speakers Series, Inc.</u>, No. CIV. A. 09-4921, 2010 WL 2545541, at *8 (E.D. Pa. June 18, 2010).

**VII.    Conclusion**

For the reasons set forth above, Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) will be granted, Defendant's Motion to Strike Unliquidated Damages will be denied as moot, Defendant's Motion to Transfer will be denied, and Plaintiff's Motion to Enforce Settlement Agreement will be denied. Plaintiff will be granted leave to file an amended complaint consistent with this Opinion. An appropriate Order follows.


BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*_____
JOSEPH F. LEESON, JR.
United States District Judge